J-S80034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARQUIS THOMAS | : | |
| | : | |
| Appellant | : | No. 3155 EDA 2017 |

Appeal from the Judgment of Sentence April 18, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003032-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 11, 2019**

Appellant Marquis Thomas appeals from the judgment of sentence imposed following his convictions for two counts of conspiracy and one count each of first-degree murder, robbery, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possessing instruments of crime (PIC).[1]  Appellant challenges the sufficiency and weight of the evidence supporting his convictions, and he claims that the court imposed an illegal sentence for one count of conspiracy.  We affirm Appellant's convictions, vacate the sentence for conspiracy to commit first-degree murder, and remand for resentencing.

The trial court summarized the relevant facts of this case as follows:

---

[1] 18 Pa.C.S. §§ 903, 2502(a), 3701(a)(1)(i), 6106, 6108, and 907, respectively.

On October 21, 2015, Lucas Weissinger received a call from his best friend, Daquan Medina [(the victim)] at around 4:00 or 5:00 p.m. [The victim] asked Lucas for a ride later to meet Remiro Maldonado. Lucas testified that he knew Mr. Maldonado from the neighborhood and that they all used to hang out at the park. Later that evening, Lucas picked up [the victim] from his house in his blue-green Chrysler 300M. After Lucas picked up [the victim], [the victim] told Lucas that he was going to sell Mr. Maldonado marijuana. Lucas drove [the victim] back to his house so he could pick up marijuana to sell to Mr. Maldonado.

After driving around, Lucas pulled into an alleyway behind a park by Wellington Street. [The victim] left his gun and the marijuana in the car and started walking down the alleyway.[fn1] Lucas then started to drive up toward [the victim] and saw a car with Mr. Maldonado in the driver's seat, Appellant in the passenger seat and [the victim] and another individual seated in the back. Lucas then gave Mr. Maldonado the marijuana. Appellant told Lucas to pull up and turn off his lights. Shortly after, Lucas saw Mr. Maldonado and Appellant pull guns on [the victim] as he was seated in the back seat of their car. Lucas panicked, hopped out of the car and then heard gunshots and saw muzzle flashes in the car. Lucas then shot [the victim's] gun once, hopped in his car, sped to the end of the alleyway, hopped out again and fired another round. He then noticed the neighbors were outside so he hopped in his car again, drove away, went down to the river and threw his gun away. Shortly after, Lucas went to his mother's house to pick up her van and to meet up with detectives. After officers apprehended Appellant, Lucas identified him as one of the individuals in the car.

> [fn1] Lucas admitted that he lied to the police initially [when he told them that he drove up the alleyway and dropped the victim] off at [Mr. Maldonado's] car because he was nervous and scared because he did not want the police to think that he was selling marijuana.

On the night in question, Mr. John Maule lived on the 7100 block of Walker Street. On that night, at about 9:00 p.m. he and his fiancé were sitting in their living room watching a movie when they heard what they believed at first was fireworks. Mr. Maule realized it was louder than fireworks so he got up to take a look out the back of his house and saw a green sedan stopped in the alleyway. He saw a white or Hispanic male in his twenties get out

of the sedan, point a handgun down the alleyway and start firing. Mr. Maule then jumped down to the ground. He waited two or three minutes before he went outside, and saw neighbors exiting their respective houses. Mr. Maule saw people standing around a male face-down, lying on the ground. They turned him over and noticed blood coming out of his mouth and that he was not breathing. Mr. Maule's fiancé started to perform CPR on the male but there was no sign of life. After the police responded to the scene, they took Mr. Maule in for an interview.

Ms. Patricia Tabor lived in the area of the 7100 block of Walker Street on the night in question. Ms. Tabor was in her living room around 9:00 p.m. on that night. She looked out her window and noticed a car parked behind her house. She looked out a few minutes later and saw that the car was still there. She noticed that there was someone in the passenger seat and someone sitting in the backseat because she saw a light from a cellphone. When she went back to her living room, she heard three or four loud pops which she believed were fireworks at first. She then went to her dining room window, looked out and saw someone running into the back seat on the passenger side and another person running around on the driver's side. She identified the vehicle as a "dark SUV." The vehicle left the scene quickly southbound toward Princeton Avenue.

Shortly after the shooting, Officer Matthew Winscom arrived on-scene with his partner. Once they determined that the area was secure, he and his partner drove up Walker Street all the way to Cottman Avenue and made a right-hand turn onto Cottman at around 9:35 p.m. Officer Winscom and his partner saw an unknown black male attempting to enter a house. The male looked in the officers' direction and tried to pull on the door handle to get inside the house. He looked back twice, grabbed for his waistband and started running westbound on Cottman Avenue. Officer Winscom's partner proceeded on foot pursuit of the male. During the chase, his partner tased the male then placed him in handcuffs. Officer Winscom identified this male as Appellant. Once Officer Winscom returned to his vehicle, he asked the victim's mother, who was still in his car, to get the individual she was on the phone with to come identify the male they just handcuffed. Two other officers picked up the witness[, Lucas Weissinger,] and had them meet on Walker Street where he positively identified Appellant as one of the males in the vehicle during the shooting.

* * *

Devon Campbell testified as an expert in the forensic analysis of cell phones. Ms. Campbell works for the Philadelphia District Attorney's Office in the Technical Services Unit as a mobile device forensic examiner. Ms. Campbell's job is to investigate and analyze cell phones related to cases that come in the office. She received her master's degree in digital forensics. Ms. Campbell has testified as an expert in the forensic analysis of cell phones four times previously in the Court of Common Pleas in Philadelphia and has never been disqualified to testify as an expert.

Ms. Campbell first provided a string of messages between [the victim] and Mr. Maldonado from [the victim's] phone. On the day in question, at 2:27:43 p.m., [the victim] received an incoming message that was read at 2:32:57 p.m. stating, "Bro im ready for yu." Next, there was an outgoing message to the same number on the same date at 2:33:06 p.m. stating, "What u wanted." From there, there were two incoming messages, one at 2:33:58 p.m. that was read at 2:34 p.m. stating, "Whole jawn I got 3025 rite now," and then another incoming message at 5:49:49 p.m. that was read at 5:50:23 p.m. stating, "Bro ma folks need 2 they good ppls." There was another outgoing text at 7:34:25 p.m. saying, "Ur folks got the cash bro cause this alot of money bro." Next, there was an incoming text message at 7:35:08 p.m. on the same date that was read at 7:40:59 p.m. stating, "Yea bro im here." Then, there was an outgoing message, at 7:45:59 p.m. saying, "Grabbin the bud bro my fault Ill be there." Next, there is an outgoing message sent at 8:14:59 p.m. stating, "Wya."[fn2] Next, there was another outgoing message at 8:49:37 p.m. stating, "Walking dwn now."

[fn2] "Wya" is a shorthand for "where you at."

Ms. Campbell then provided a string of messages between [the victim] and Lucas from [the victim's] phone. [The victim] received an incoming message from Lucas at 9:05:24 p.m. stating, "Did u count the bread?" Then there was an outgoing message to Lucas stating, "I just counted half," at 9:05:52 p.m. There was another incoming message from Lucas at 9:10:46 p.m. that stated, "Have the window down." There were no more reported phone calls or text messages that came from that phone.

Trial Ct. Op., 7/19/18, at 3-8 (record citations omitted).

On April 1, 2016, the Commonwealth filed a criminal information, charging Appellant with multiple offenses related to the shooting. Following a joint trial with Maldonado, a jury convicted Appellant of the aforementioned crimes. On April 18, 2017, the trial court sentenced Appellant to an aggregate term of life imprisonment. Specifically, the court imposed concurrent terms of life imprisonment for the first-degree murder and conspiracy to commit first-degree murder convictions.[2]

Appellant timely filed a post-sentence motion on April 26, 2017, challenging the weight and sufficiency of the evidence supporting his convictions. On August 28, 2017, the trial court entered an order denying the post-sentence motion by operation of law.

Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. The court filed a responsive opinion, concluding Appellant was not entitled to relief on his weight and sufficiency claims. The court explained that Lucas Weissinger provided credible eyewitness testimony for the Commonwealth to prove all elements of the offenses at issue.

---

[2] The court also sentenced Appellant to concurrent terms of ten to twenty years' imprisonment for robbery, three and one-half to seven years' imprisonment for carrying a firearm without a license, two and one-half to five years' imprisonment for carrying a firearm in Philadelphia, two and one-half to five years' imprisonment for PIC, and ten to twenty years' imprisonment for conspiracy to commit robbery.

On appeal, Appellant raises four questions, which we have reordered as follows:

[1.] Was the evidence insufficient as a matter of law to establish . . . Appellant's guilt beyond a reasonable doubt on all charges because the evidence presented at trial by the sole eyewitness was unreliable and not credible?

[2.] Did the trial court commit an abuse of discretion by ruling that the verdicts were not against the weight of the evidence?

[3.] Did the Commonwealth establish by sufficient evidence that Appellant committed the crime of criminal conspiracy to commit first-degree murder and robbery because it failed to provide that he reached an agreement to engage in criminal conduct with any other person?

[4.] Is the sentencing of life imprisonment imposed on the conspiracy to commit first-degree murder conviction illegal and must it be vacated?

Appellant's Brief at 3 (full capitalization omitted).

In his first three issues, Appellant attacks the reliability of Weissinger's testimony. *Id.* at 26-27, 36-37. Specifically, Appellant complains that Weissinger, the only witness to identify Appellant as a shooter, smoked marijuana on the night in question and "admitted that he lied to the police . . . about crucial aspects of the case to protect himself" from criminal charges. *Id.* at 36. Regarding Weissinger's identification, Appellant emphasizes "the first time he ever observed [A]ppellant was while he (Weissinger) was inside a car looking in the mirror of his car at another car some distance away." *Id.* at 26. Moreover, Weissinger never met Appellant before the night of the

- 6 -

shooting, and Weissinger "observed [A]ppellant for [a] very short time in the dark." *Id.* at 26.

Appellant argues that Weissinger's testimony "was simply not believable or credible because it is inherently inconsistent and contradictory and . . . the evidence failed to demonstrate that [A]ppellant shot the victim or that he was an accomplice or co-conspirator of the person or persons who did kill the victim." *Id.* at 21. Appellant also contends that the jury's verdicts shock the conscience in light of the concerns about Weissinger's credibility; therefore, "the trial court made a fundamental error in denying [A]ppellant's post-sentence weight of the evidence claim." *Id.* at 36.

Regarding his conspiracy convictions, Appellant acknowledges that the Commonwealth's evidence demonstrated that he acted in concert with others on the night of the shooting. *Id.* at 34. Nevertheless, Appellant insists that the Commonwealth "presented no evidence that [A]ppellant and those other persons spoke about killing or robbing the victim." *Id.* Absent more, Appellant maintains the Commonwealth failed to prove the existence of a conspiratorial agreement and shared criminal intent beyond a reasonable doubt. *Id.*

We apply the following standard when reviewing a sufficiency claim:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

- 7 -

to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation and brackets omitted).

Our standard of review regarding challenges to the weight of the evidence is as follows:

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [fact-finder's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

We have explained that

[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts

are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

*Id.* (citation omitted).

"To convict a defendant of first-degree murder, the jury must find that (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with a specific intent to kill." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (citations omitted). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Id.* (citation omitted).

Further, the Crimes Code defines the offense of criminal conspiracy as follows:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

- 9 -

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Melvin*, 103 A.3d 1, 42 (Pa. Super. 2014) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* at 42-43 (citation omitted).

"Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Barnes*, 871 A.2d 812, 820 (Pa. Super. 2005) (citation omitted). "In the case of a conspiracy to commit homicide, each member of the conspiracy can be convicted of first-degree murder regardless of who inflicted the fatal wound."

*Commonwealth v. Collins*, 70 A.3d 1245, 1250 (Pa. Super. 2013) (citation omitted).

After careful review of the record in this matter, we adopt the trial court's reasoning regarding Appellant's sufficiency and weight claims.[3] **See** Trial Ct. Op., 7/19/18, at 8-18. Accordingly, we conclude that the Commonwealth presented sufficient evidence to support each of Appellant's convictions, and that the court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. **See Palmer**, 192 A.3d at 89; **Landis**, 89 A.3d at 699.

In his fourth issue, Appellant claims that the trial court did not have statutory authority to impose a term of life imprisonment for his conspiracy to commit first-degree murder conviction.[4] Appellant's Brief at 38. The

---

[3] To the extent Appellant argues that Weissinger based his identification on what he saw in the side view mirror, we emphasize that this was not the only opportunity for Weissinger to view Appellant. Significantly, Weissinger testified that he initially drove down the alleyway, stopped alongside Appellant and Maldonado's vehicle, and tossed the marijuana to Maldonado through the window. **See** N.T. Trial, 4/11/17, at 122. Weissinger was close enough to lean over and shake Maldonado's hand through the window. **Id.** at 120. At that point, Appellant spoke directly to Weissinger stating, "Cut your lights off, pull up." **Id.** Appellant's instructions left Weissinger "shocked" and "scared," but he complied and pulled up, approximately two and one-half car lengths in front of Maldonado's vehicle. **Id.** at 125, 129. Only after pulling up did Weissinger rely on the side view mirror to observe the activity in Maldonado's vehicle. **Id.** at 129. Further, lights from a playground adjacent to the alleyway helped to illuminate the scene and aid in Weissinger's ability to identify Appellant. **Id.** at 131.

[4] Appellant did not raise this claim in his post-sentence motion or Rule 1925(b) statement.

- 11 -

Commonwealth concedes that Appellant's conspiracy sentence requires amendment. Commonwealth's Brief at 18.

"A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence," which is non-waivable where the reviewing court has jurisdiction. *Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013). "Where a case requires a correction of sentence, this Court has the option of either remanding for resentencing or amending the sentence directly." *Commonwealth v. Klein*, 795 A.2d 424, 430 (Pa. Super. 2002) (citation and brackets omitted).

Instantly, Section 1102(c) of the Crimes Code states that "a person who has been convicted of . . . conspiracy to commit murder . . . may be sentenced to a term of imprisonment which shall be fixed by the court at not more than forty years." 18 Pa.C.S. § 1102(c). Therefore, the sentence of life imprisonment imposed for conspiracy to commit first-degree murder is illegal. *See* 18 Pa.C.S. § 1102(c). Accordingly, we vacate Appellant's judgment of sentence for conspiracy to commit first-degree murder and remand for resentencing. *See Klein*, 795 A.2d at 430.

In sum, we affirm Appellant's convictions, but vacate the sentence for conspiracy to commit first-degree murder, and remand for resentencing. We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

P.J.E., Bender joins the memorandum.

Judge Bowes files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/19

**FILED**

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL TRIAL DIVISION

2018 JUL 19 AM II: 18

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO.: CP-51-CR-0003032-2016 |
| | : | |
| v. | : | Superior Court No.: |
| | : | ~~2627 EDA 2017~~  3/55 EDA 2017 |
| MARQUIS THOMAS | : | |

CP-51-CR-0003032-2016 Comm. v. THOMAS, MARQUIS
Opinion

<u>OPINION</u>



8138618401

**ANHALT, J.**

Appellant in the above-captioned matter appeals this Court's judgment regarding his conviction for First-Degree Murder, 18 Pa.C.S.A. § 2502(a), Conspiracy to Commit Murder, 18 Pa.C.S.A. § 903, Robbery – Inflict Serious Bodily Injury, 18 Pa.C.S.A. § 3701(a)(1)(i), Conspiracy to Commit Robbery, 18 Pa.C.S.A. § 903, Firearms not to be carried without a license ("VUFA 6106"), 18 Pa.C.S.A. § 6106(a)(1), Carrying firearms on public streets or public property in Philadelphia ("VUFA 6108"), 18 Pa.C.S.A. § 6108 and Possessing and Instrument of Crime ("PIC"), 18 Pa.C.S.A. § 907(a). The Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the Court holds that the judgment of conviction should be affirmed.

**PROCEDURAL HISTORY**

On October 22, 2015, police arrested and charged Appellant, Marquis Thomas with numerous offenses stemming from a shooting incident that occurred on October 21, 2015. Following a jury trial before this Court, on April 18, 2017, a jury found Appellant guilty of First-Degree Murder (H1), Conspiracy to Commit Murder (H1), Robbery (F1), Conspiracy to Commit

Robbery (F1), VUFA 6106 (F3), VUFA 6108 (M1) and PIC (M1). On that date, this Court sentenced Appellant to life in prison without the possibility of parole.

Appellant filed a timely notice of appeal on September 26, 2017. On September 28, 2017, this Court ordered Appellant pursuant to Pa. R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. On October 18, 2017, Appellant filed a Statement of Errors Complained of on Appeal. On December 12, 2017, the Superior Court remanded the case to the Trial Court for a Grazier hearing. On January 9, 2018, Appellant filed a *pro se* Post Conviction Relief Act ("PCRA") petition. On April 13, 2018, Gerald Stein entered his appearance to represent Appellant, making a Grazier hearing unnecessary. On June 11, 2018, the Court granted Appellant's motion to withdraw his PCRA petition.

Appellant raises the following issues on appeal:

1. That the defendant is entitled to an arrest of judgment as the evidence was insufficient to support the verdict which found the Defendant guilty of murder in the first degree, robbery – inflict serious bodily injury, possession of an instrument of crime (PIC), violation of the Uniform Firearms Act (VUFA) 6106 and 6108, conspiracy to commit murder and conspiracy to commit robbery. The evidence was insufficient as to all charges. The evidence failed to sustain the elements of each and every crime and, when taken as a whole, was grossly unreliable and would lead to a verdict being based on surmise and conjecture, all in violation of *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993); the evidence is insufficient and the defendant is entitled to an arrest of judgment.

2. The defendant should receive a new trial on all of the above-stated charges, as the verdict is against the weight of evidence. In this review, the Court need not grant the

2

Commonwealth every inference but may review the evidence anew, especially with regard to the evidence and the law concerning mere presence, and believed self-defense which applied in the instant matter. The evidence simply does not establish guilt beyond a reasonable doubt with regard to all charges, including to murder in the first degree and robbery.

3. The Commonwealth did not prove the element of malice and, hence, cannot establish murder. The Commonwealth did not prove a specific intent to kill. A defendant is entitled to a new trial where the verdict shocks one's sense of justice. *See Commonwealth v. Laing*, 456 A.2d 204 (Pa. 1983).

4. The Commonwealth did not prove that the Defendant was either a principal, accomplice or a conspirator with regard to any of the crimes charged. The Commonwealth did not establish by sufficient evidence that the Defendant had reached an agreement to engage in criminal conduct with any other person on the day of the incident. Mere association or presence at the scene of a crime is insufficient to establish a conspiracy. *See, In the Interest of J.F.*, 714 A.2d 467 (Pa. Super. 1998), cert. denied 528 U.S. 814 (1999).

5. The Trial Court erred in not giving the jury a charge on manslaughter or on self-defense/perceived self-defense. The testimony at trial clearly showed that at least one of the witnesses opened fire at the scene and that witness admitted on the stand to firing his weapon at the scene. The jury should have been charged on manslaughter and self-defense.

**FACTUAL HISTORY**

On October 21, 2015, Lucas Weissinger received a call from his best friend, Daquan Medina ("Quan") at around 4:00 or 5:00 p.m. Notes of Testimony (N.T.) 4/11/17 at 97. Quan asked Lucas for a ride later to meet Remiro Maldonado. *Id.* Lucas testified that he knew Mr.

3

Maldonado from the neighborhood and that they all used to hang out at the park. *Id.* at 98. Later that evening, Lucas picked up Quan from his house in his blue-green Chrysler 300M. *Id.* at 101-102. After Lucas picked up Quan, Quan told Lucas that he was going to sell Mr. Maldonado marijuana. *Id.* at 102-103. Lucas drove Quan back to his house so he could pick up marijuana to sell to Mr. Maldonado. *Id.* at 110.

After driving around, Lucas pulled into an alleyway behind a park by Wellington Street. *Id.* at 115. Quan left his gun and the marijuana in the car and started walking down the alleyway.[1] *Id.* at 116. Lucas then started to drive up toward Quan and saw a car with Mr. Maldonado in the driver's seat, Appellant in the passenger seat and Quan and another individual seated in the back. *Id.* at 120. Lucas then gave Mr. Maldonado the marijuana. *Id.* Appellant told Lucas to pull up and turn off his lights. *Id.* at 128. Shortly after, Lucas saw Mr. Maldonado and Appellant pull guns on Quan as he was seated in the back seat of their car. *Id.* at 129. Lucas panicked, hopped out of the car and then heard gunshots and saw muzzle flashes in the car. *Id.* at 129, 136. Lucas then shot Quan's gun once, hopped in his car, sped to the end of the alleyway, hopped out again and fired another round. *Id.* at 130. He then noticed the neighbors were outside so he hopped in his car again, drove away, went down to the river and threw his gun away. *Id.* Shortly after, Lucas went to his mother's house to pick up her van and to meet up with detectives. *Id.* at 142. After officers apprehended Appellant, Lucas identified him as one of the individuals in the car. *Id.* at 144.

On the night in question, Mr. John Maule lived on the 7100 block of Walker Street. *Id.* at 61. On that night, at about 9:00 p.m. he and his fiancé were sitting in their living room watching

---

[1] Lucas admitted that he lied to the police initially about dropping Quan off at the car because he was nervous and scared because he did not want the police to think that he was selling marijuana. *Id.* at 207-208.

4

a movie when they heard what they believed at first was fireworks. *Id.* at 65. Mr. Maule realized it was louder than fireworks so he got up to take a look out the back of his house and saw a green sedan stopped in the alleyway. *Id.* He saw a white or Hispanic male in his twenties get out of the sedan, point a handgun down the alleyway and start firing. *Id.* at 65-66. Mr. Maule then jumped down to the ground. *Id.* at 70. He waited two or three minutes before he went outside, and saw neighbors exiting their respective houses. *Id.* at 71. Mr. Maule saw people standing around a male face-down, lying on the ground. *Id.* They turned him over and noticed blood coming out of his mouth and that he was not breathing. *Id.* at 71-72. Mr. Maule's fiancé started to preform CPR on the male but there was no sign of life. *Id.* at 72. After the police responded to the scene, they took Mr. Maule in for an interview. *Id.* at 76-77.

Ms. Patricia Tabor lived in the area of the 7100 block of Walker Street on the night in question. N.T. 4/12/17 at 49. Ms. Tabor was in her living room around 9:00 p.m. on that night. *Id.* She looked out her window and noticed a car parked behind her house. *Id.* She looked out a few minutes later and saw that the car was still there. *Id.* at 49-50. She noticed that there was someone in the passenger seat and someone sitting in the backseat because she saw a light from a cellphone. *Id.* at 52. When she went back to her living room, she heard three or four loud pops which she believed were fireworks at first. *Id.* at 54-55. She then went to her dining room window, looked out and saw someone running into the back seat on the passenger side and another person running around on the driver's side. *Id.* at 55. She identified the vehicle as a "dark SUV." *Id.* at 52. The vehicle left the scene quickly southbound toward Princeton Avenue. *Id.* at 56-57.

Shortly after the shooting, Officer Matthew Winscom arrived on-scene with his partner. *Id.* at 130. Once they determined that the area was secure, he and his partner drove up Walker

5

Street all the way to Cottman Avenue and made a right-hand turn onto Cottman at around 9:35 p.m. *Id.* Officer Winscom and his partner saw an unknown black male attempting to enter a house. *Id.* at 130-131. The male looked in the officers' direction and tried to pull on the door handle to get inside the house. *Id.* at 133. He looked back twice, grabbed for his waistband and started running westbound on Cottman Avenue. *Id.* at 134. Officer Winscom's partner proceeded on foot pursuit of the male. *Id.* During the chase, his partner tased the male then placed him in handcuffs. *Id.* Officer Winscom identified this male as Appellant. *Id.* Once Officer Winscom returned to his vehicle, he asked the victim's mother, who was still in his car, to get the individual she was on the phone with to come identify the male they just handcuffed. *Id.* at 145. Two other officers picked up the witness and had them meet on Walker Street where he positively identified Appellant as one of the males in the vehicle during the shooting. *Id.* at 146.

Officer Greg Yatcilla from the crime scene unit testified that he found a pair of silver-rimmed glasses at the scene of the shooting. *Id.* at 82. Officer Yatcilla observed two .40 caliber fire cartridge casings ("FCCs") at the scene and a copper fragment which was determined to be a piece of a bullet. *Id.* at 101-102.

Dr. Lindsay Simon, M.D. testified as an expert in forensic pathology. N.T. 4/12/17 at 168. Dr. Simon performed the autopsy of Quan. *Id.* at 173. She determined the cause of death was a gunshot wound of the right upper, extremity, or arm, with injury to the torso. *Id.* at 177. This bullet entered and exited through Quan's upper-right arm and entered through the upper right chest and perforated the right lung and the upper lobe of his left lung. (Exhibit C-30). The next bullet entered Quan's left forearm and exited off the side of his forearm. *Id.* at 192. The third bullet entered the top of his right buttock and exited the right side of his hip. *Id.* at 193.

Devon Campbell testified as an expert in the forensic analysis of cell phones. N.T. 4/13/17 at 125, 131. Ms. Campbell works for the Philadelphia District Attorney's Office in the Technical Services Unit as a mobile device forensic examiner. *Id.* at 126. Ms. Campbell's job is to investigate and analyze cell phones related to cases that come in the office. *Id.* She received her master's degree in digital forensics. *Id.* at 127. Ms. Campbell has testified as an expert in the forensic analysis of cell phones four times previously in the Court of Common Pleas in Philadelphia and has never been disqualified to testify as an expert. *Id.* at 130-131.

Ms. Campbell first provided a string of messages between Quan and Mr. Maldonado from Quan's phone. *Id.* at 167. On the day in question, at 2:27:43 p.m., Quan received an incoming message that was read at 2:32:57 p.m. stating, "Bro im ready for yu." *Id.* at 175. Next, there was an outgoing message to the same number on the same date at 2:33:06 p.m. stating, "What u wanted." *Id.* From there, there were two incoming messages, one at 2:33:58 p.m. that was read at 2:34 p.m. stating, "Whole jawn I got 3025 rite now," and then another incoming message at 5:49:49 p.m. that was read at 5:50:23 p.m. stating, "Bro ma folks need 2 they good ppls." *Id.* at 175. There was another outgoing text at 7:34:25 p.m. saying, "Ur folks got the cash bro cause this alot of money bro." *Id.* at 179. Next, there was an incoming text message at 7:35:08 p.m. on the same date that was read at 7:40:59 p.m. stating, "Yea bro im here." *Id.* Then, there was an outgoing message, at 7:45:59 p.m. saying, "Grabbin the bud bro my fault Ill be there." *Id.* at 179-180. Next, there is an outgoing message sent at 8:14:59 p.m. stating, "Wya."[2] *Id.* at 180. Next, there was another outgoing message at 8:49:37 p.m. stating, "Walking dwn now." N.T. 4/13/17 at 180.

---

[2] "Wya" is a shorthand for "where you at."

Ms. Campbell then provided a string of messages between Quan and Lucas from Quan's phone. *Id.* at 187. Quan received an incoming message from Lucas at 9:05:24 p.m. stating, "Did u count the bread?" *Id.* at 188. Then there was an outgoing message to Lucas stating, "I just counted half," at 9:05:52 p.m. *Id.* There was another incoming message from Lucas at 9:10:46 p.m. that stated, "Have the window down." *Id.* There were no more reported calls or text messages that came from that phone. *Id.*

## DISCUSSION

### 1. The evidence was sufficient to convict Appellant of all charges.

Appellant argues that the evidence produced at trial was insufficient to sustain a guilty verdict for Murder of the First Degree, Conspiracy to Commit Murder, Robbery, Conspiracy to Commit Robbery, VUFA 6106, VUFA 6108 and PIC. Specifically, Appellant argues that the evidence failed to sustain the elements of each and every crime and, when taken as a whole, was grossly unreliable and would lead to a verdict being based on surmise and conjecture, all in violation of *Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993). Ultimately, Appellant contends that Lucas's testimony was so unreliable that the jury was not permitted to return a guilty verdict.

When presented with a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Our standard of review in assessing whether sufficient evidence was presented to sustain Appellant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

8

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Walsh*, 36 A.3d 613, 618–19 (Pa. Super. 2012) (*quoting Commonwealth v. Brumbaugh*, 932 A.2d 108, 109–110 (Pa. Super. 2007)). In determining whether there was sufficient evidence to support a jury's finding, we are "obliged to determine whether the evidence presented at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to satisfy all elements of the offense beyond a reasonable doubt." *Commonwealth v. Brown*, 987 A.2d 699, 705 (Pa. 2009).

At the outset, and to avoid reiteration throughout the analysis of each offense, Lucas's testimony was corroborated by Mr. Maule's testimony, Ms. Tabor's testimony and the text messages between Mr. Maldonado and Quan and Quan and Lucas. Specifically, Lucas admitted to shooting when Appellant and Mr. Maldonado drove away after they already shot Quan. N.T. 4/11/17 at 130. This testimony was directly corroborated by Mr. Maule, who at first, heard loud pops, then looked outside to see a white or Hispanic male in his twenties get out of a green sedan and shoot a handgun down the alleyway.[3] *Id.* at 71. In sum, Lucas's credible eye-witness testimony established sufficient evidence to convict Appellant of all charges.

Appellant asserts that Lucas's testimony was so unreliable that the verdict was based on conjecture. Although Lucas admitted to lying on the stand, the lies were minimal in nature. Lucas lied about the type of car he drove to the drug deal with and the manner in which he

---

[3] Lucas drove a blue-green Chrysler 300M, a sedan.

9

dropped off Quan for the drug deal. *Id.* at 207-208. Lucas admitted that he lied because he was nervous and scared because he did not want police to think he was selling marijuana. *Id.* As the finder of fact, the jury is to determine witness credibility and is free to believe all, part or none of a witnesses' statement. Here, the jury was free to believe the other, more important aspects of Lucas's testimony and not discredit his entire testimony.

### a. Murder of the First Degree.

Appellant contends that the evidence provided was not sufficient to establish his first-degree murder conviction. However, Lucas's eyewitness testimony was sufficient to sustain Appellant's murder conviction.

To sustain a conviction of first-degree murder, the Commonwealth must establish that: (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill. *Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). "Specific intent to kill as well as malice can be inferred in a trial for first-degree murder from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Thomas*, 54 A.3d 332, 335 (Pa. 2012). Further, "each member of a conspiracy to commit murder may be convicted of first-degree murder, regardless of which of the conspirators inflicted the fatal wound, where the elements of first-degree murder are made out as to that conspirator." *Commonwealth v. Busanet*, 817 A.2d 1060, 1064 (Pa. 2002).

Here, there is no question that Quan was unlawfully killed. N.T. 4/11/17 at 129. From Lucas's eyewitness testimony, which the jury was proper in crediting, Appellant and his coconspirator were in the car with Quan when he saw and both Appellant and Mr. Maldonado point their guns and shoot Quan. *Id.* It is easy to gather that Appellant was at least in part,

10

responsible for the killing. And as explained by *Busanet*, each member of the conspiracy may be convicted of first-degree murder regardless of whether Appellant's bullet inflicted the fatal wound. Further, as provided by the court in *Thomas*, a specific intent to kill may be inferred by the use of a deadly weapon upon a vital part of one's body. Quan sustained three bullet wounds, one of which was to his upper body and penetrated his chest. N.T. 4/12/17 at 177, 192. Appellant and his coconspirator firing multiple shots at point blank range at Quan as he sat inches away from them in their vehicle is sufficient for the jury to draw the inference that Appellant held the specific intent to kill. N.T. 4/11/17 at 129. Therefore, there was sufficient evidence to convict Appellant of first-degree murder.

### b. Conspiracy to Commit Murder.

Appellant next argues that the evidence was insufficient to sustain his conspiracy to commit murder conviction. However, for the reasons set forth in the previous subsection, there was sufficient evidence to sustain his conviction.

Under the Pennsylvania Criminal Code, an individual is guilty of conspiracy if that individual, with another person or persons to commit a crime if, "with the intent of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a)(1). Although each member of a conspiracy must possess the specific intent to kill before a conviction of first-degree murder can be sustained, that intent can be demonstrated by circumstantial evidence. *Commonwealth v. Wayne*, 720 A.2d 456, 465 (Pa. 1998).

Again, Lucas's testimony provides sufficient evidence of a conspiracy. Although there is no evidence of an express verbal agreement, following *Wayne*, the circumstantial evidence provides that there was a conspiracy to rob and kill Quan. During this drug deal, both Appellant

11

and Mr. Maldonado were in their vehicle with Quan. N.T. 4/11/17 at 120. Lucas witnessed both Appellant and Mr. Maldonado pull guns on Quan as he sat in the back seat of their car. *Id.* at 129. Lucas then witnessed Appellant and Mr. Maldonado shoot Quan then leave in their vehicle. *Id.* at 129, 136. Again, as explained in the previous subsection, Appellant and his coconspirator firing multiple shots at point blank range at Quan as he sat inches away from them in their vehicle is sufficient evidence for the jury to draw the inference that Appellant held the specific intent to kill Quan. *Id.* at 129. Additionally, the medical examiner provided that Quan sustained three gunshot wounds, one of which was to the upper body which penetrated his chest. N.T. 4/12/17 at 192. Therefore, there is sufficient evidence to convict Appellant of conspiracy to commit murder.

### c. Robbery.

Appellant next contends that the evidence was insufficient to sustain a conviction for robbery. However, because Lucas's testimony provides that Appellant killed Quan then took both the money and the marijuana from the drug deal, his claim fails.

An individual is guilty of robbery if during the course of committing a theft, inflicts serious bodily injury upon another. 18 Pa.C.S.A. § 3701(a)(1)(i). Ultimately, the Commonwealth must show that Appellant inflicted serious bodily injury upon Quan during the course of committing a theft. The Superior Court in *Commonwealth v. Smith*, 459 A.2d 777, 788 (Pa. Super. 1983) determined that the evidence was sufficient to convict the defendant of robbery. In *Smith*, the defendant and his accomplice took the victim's wallet and car after slaying the victim. *Id.* Additionally, the infliction of serious bodily injury is evident in this case as the victim was murdered. *Id.*

Similar to *Smith*, Appellant and Mr. Maldonado killed Quan and then drove off with both the money and marijuana of the drug deal. N.T. 4/11/17 at 130. This evidence by itself is

12

sufficient to convict an individual of robbery. Therefore, there was sufficient evidence to convict Appellant of robbery.

### d. Conspiracy to Commit Robbery.

Appellant next contends that the evidence provided was insufficient to convict him of conspiracy to commit robbery. Since the evidence showed that Appellant and Mr. Maldonado both participated in the robbery during the drug deal, the jury was proper in convicting Appellant of conspiracy to commit robbery.

Under the Pennsylvania Criminal Code,

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a)(1). Existence of conspiracy to commit robbery is dependent upon proof of agreement, or common design, to commit the unlawful act of robbery. *Commonwealth v. Olds*, 469 A.2d 1072, 1074 (Pa. Super. 1983). However, direct proof of an agreement is not required; the conduct of the parties and the circumstances surrounding such conduct may be sufficient to establish an inference of common design. *Commonwealth v. Sadusky*, 399 A.2d 347 (Pa. 1979). By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Kwatkoski*, 406 A.2d 1102 (Pa. 1979). A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed. *Commonwealth v. Horvath*, 144 A.2d 489, 492 (Pa. Super. 1958).

Again, in *Smith*, 459 A.2d at 788, the defendant was properly convicted of conspiracy to commit robbery. The court in *Smith* noted that the evidence, although circumstantial, provided

13

that the defendant and another individual planned to rob the victim. *Id.* The defendant and his coconspirator accompanied the victim to a deserted area despite the explanation that he was merely being given a ride home before he was murdered and robbed. *Id.* The *Smith* court explained that from this evidence, a rational fact finder could find that the defendant conspired to commit the murder and robbery. *Id.*

Again, Lucas's testimony provided that a drug deal was set up in the alleyway in the car which Appellant and Mr. Maldonado were both present. N.T. 4/11/17 at 116, 120. Quan met with Appellant and Mr. Maldonado to sell them marijuana and began counting their money as he sat in the back seat of their car. *Id.* at 120; N.T. 4/13/17 at 188. Appellant and Maldonado both turned around and shot Quan as he sat in the back seat. N.T. 4/11/17 at 129. Appellant and Mr. Maldonado drove away in their SUV with both the marijuana and the money. *Id.* at 130. Like the victim in *Smith*, Quan was brought to a specific location where he thought a drug deal was to take place. *Id.* at 116. Instead, both Appellant and Mr. Maldonado pointed their guns and shot Quan. *Id.* at 129. Again, although there was no express verbal agreement, similar to *Smith*, the jury was well within reason to infer that there was a "common design" between Appellant and Mr. Maldonado to rob and kill Quan. Therefore, there was sufficient evidence to convict Appellant of conspiracy to commit robbery.

### e. VUFA 6106 and 6108.

Appellant next contends that there is insufficient evidence to convict him under both VUFA 6106 and 6108. First, under 18 Pa.C.S.A. § 6106.

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106.

14

Next, under 18 Pa.C.S.A. § 6108:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

In *Commonwealth v. Monroe*, 422 A.2d 193, 195 (Pa. Super. 1980), testimonial evidence was sufficient to prove the defendant guilty of carrying firearms on public streets or public property in Philadelphia when he shot the victim on a Philadelphia public street. Similarly, the court in *Commonwealth v. Petrakovich*, 329 A.2d 844, 847 (Pa. 1974) determined there was sufficient evidence to support a conviction of carrying a firearm without license against the defendant who – based on witness testimony – walked into the diner where his wife worked, drew a gun and fired it at his wife.

Ultimately, the Commonwealth must prove that Appellant carried a firearm in public without a license for VUFA 6016 and that it occurred on the streets of Philadelphia for VUFA 6108. Here, like *Monroe* and *Petrakovich* there is eyewitness testimony from Lucas that Appellant possessed a firearm in public, while in the car, parked in the area of the 7100 block of Walker Street in Philadelphia. N.T. 4/11/17 at 61, 129, 136. Additionally, the Commonwealth provided a certificate of non-licensure which stated that on the date of this incident, October 21, 2015, Appellant did not have a valid license to carry a firearm. N.T. 4/17/17 at 130. Therefore, the Commonwealth provided sufficient evidence to sustain the convictions for both VUFA 6106 and 6108.

### f. PIC.

Appellant asserts that the Commonwealth did not provide sufficient evidence to sustain a conviction of PIC. A person is guilty of PIC if he possesses any instrument of crime with intent

15

to employ it criminally. 18 Pa.C.S.A. § 907(a). "In order to convict appellant of [PIC], the Commonwealth had to prove that she possessed her gun under circumstances manifestly inappropriate for such lawful uses the gun may have had and with an intent to employ it criminally." *Commonwealth v. Jeter*, 418 A.2d 625, 628 (Pa. Super. 1980).

In *Jeter*, evidence that the defendant entered victim's bar, drew a loaded gun from her pocket and fired it twice at the victim was sufficient to sustain a conviction for PIC. *Id.* In *Commonwealth v. McNair*, 603 A.2d 1014, 1017 (Pa. Super. 1992), evidence that the defendant used a loaded gun to shoot the victims was sufficient to support the conviction for PIC. The court in *Monroe*, 422 A.2d at 195 explained that testimonial evidence supported the conviction for PIC where the defendant used a firearm to shoot the victim. In *Monroe*, the witness stated that he observed the firearm in the defendant's hand as the second shot was being fired. *Id.* The *Monroe* court stated that even if there is no direct evidence that the defendant concealed the weapon on his person, it can reasonably be inferred from the victim's testimony. *Id.*

Here, testimonial evidence that Appellant and Mr. Maldonado discharged a firearm at the victim by itself, is sufficient to establish Appellant's guilt of PIC. N.T. 4/11/17 at 61, 129, 136. This case is analogous to *McNair*, *Monroe* and *Jeter* because Appellant here also fired a gun at the victim. *Id.* Like the all three cases, the testimonial evidence here is sufficient to show that Appellant possessed a firearm. *Id.* The distinctions in the results of the shootings, however, are irrelevant. Here, the credible testimony provided that Appellant possessed a gun and had the intent to criminally employ it through his decision to discharge the firearm and kill Quan is sufficient. *Id.* at 129. Therefore, there is sufficient evidence to convict Appellant of PIC.

**2. The verdict was not against the weight of evidence.**

16

Appellant next contends that he is entitled to a new trial because the verdict on all charges was against the weight of evidence. Appellant contends that believed self-defense applies in this matter. However, for many of the reasons stated in the sufficiency section, the verdict was not against the weight of evidence.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). The Supreme Court of Pennsylvania in *Champney* explained that an appellate court cannot substitute its judgment for that of the finder of fact. *Id.* Therefore, the court may only reverse the lower court if the verdict is so contrary to the evidence as to "shock one's sense of justice." *Id. citing Commonwealth v. Small*, 741 A.2d 666, 672–73 (Pa. 1999). The Supreme Court has set forth the following standard of review for Appellant's claim that the verdict is against the weight of evidence and that he should be entitled to a new trial:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). (citations and quotation omitted).

*See also Kaplan v. O'Kane*, 835 A.2d 735, 737 (Pa. Super. 2003). (holding "[t]he power to grant a new trial lies inherently with the trial court, and [the] appellate court will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case.").

Again, Lucas's testimony was corroborated by Mr. Maule's testimony, Ms. Tabor's testimony and the text messages between Mr. Maldonado and Quan and Quan and Lucas. Specifically, Lucas admitted to shooting when Appellant and Mr. Maldonado drove away after they shot Quan. N.T. 4/11/17 at 129, 136. This testimony was directly corroborated by Mr. Maule, who at first, heard loud pops, then looked outside to see a white or Hispanic male in his twenties get out of a green sedan and shoot a handgun down the alleyway. *Id.* at 71. The jury was proper in making their determination based on Lucas's eyewitness testimony.

Additionally, there is no evidence that would suggest that there was a reason that Appellant needed to use deadly force as a form self-defense. Although there is evidence that Lucas fired his weapon, the evidence provides that he fired it after Appellant and Mr. Thomas murdered Quan and drove away. *Id.* at 129, 136. Appellant provides no evidence to support a self-defense theory. Therefore, the verdict was not against the weight of evidence.

### 3. The Commonwealth did prove the element of malice.

Appellant next argues that the Commonwealth did not prove malice and therefore, cannot establish murder. Appellant further alleges that the Commonwealth did not prove a specific intent to kill. Appellant cites *Commonwealth v. Laing*, 456 A.2d 204 (Pa. Super. 1983) and argues that he is entitled to a new trial because the verdict shock's one's sense of justice.[4] However, this Court analyzed these issues in the sections 1 and 2 of this opinion. To avoid reiteration, for the reasons set forth in sections 1 and 2, the Commonwealth did prove malice in connection with Appellant's murder charge.

---

[4] Appellant even uses the weight of evidence standard in his argument. This Court addressed Appellant's weight of evidence argument in section 2 of this opinion. Additionally, this Court addressed the specific element of malice in the sufficiency section, section 1 of this Opinion.

18

## 4. The Commonwealth did prove that Appellant was either the principal, accomplice or conspirator.

Appellant next argues that the Commonwealth did not prove that Appellant was either the principal, accomplice or a conspirator with regard to any of the crimes charged. Specifically, Appellant claims that the Commonwealth did not establish by sufficient evidence that he had reached an agreement to engage in criminal conduct with any other person on the day of the incident. Appellant cites *In the Interest of J.F.*, 714 A.2d 467 (Pa. Super. 1998) and contends that mere association or presence at the scene of a crime is insufficient to establish conspiracy. However, as explained in the conspiracy to commit murder and conspiracy to commit robbery subsections of this Court's sufficiency analysis, the Commonwealth did prove that Appellant was a principal, accomplice or conspirator.

As explained in the sufficiency section of this opinion, the Commonwealth did prove conspiracy. To reiterate, through Lucas's testimony, Appellant and Mr. Maldonado were both present in the car, both drew guns and both shot at and killed Quan. N.T. 4/11/17 at 129. Therefore, the Commonwealth did prove that Appellant was the principal or at least the conspirator or accomplice in the robbery and murder of Quan.

## 5. This Court did not err in denying Appellant's request for a manslaughter and self-defense charge.

Appellant next argues that this Court erred in not giving the jury charge on manslaughter or on self-defense/perceived self-defense. Appellant contends that the testimony at trial clearly showed that at least one of the witnesses opened fire at the scene and that witness admitted on the stand to firing his weapon at the scene. However, evidence showed that Lucas shot as the car drove away after the murder and in no way supported a self-defense or manslaughter charge.

19

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 798–799 (Pa. 2009). A defendant charged with murder is entitled to an instruction on the lesser offense of voluntary manslaughter only if the evidence reasonably supports such an instruction. *Commonwealth v. Cox*, 686 A.2d 1279, 1291 (Pa. 1996). Further, where there is no evidence of provocation or anger or legal passion, no charge for voluntary manslaughter is required. *Commonwealth v. Corbin*, 247 A.2d 584, 586 (Pa. 1968). Similarly, a self-defense instruction is not warranted where evidence does not support finding that defendant acted in self-defense. *Commonwealth v. Washington*, 692 A.2d 1024, 1028 (Pa. 1997). A valid claim of self-defense must be made out as matter of law, as determined by trial judge, before issue of self-defense may be submitted to jury for consideration. *Commonwealth v. Mayfield*, 585 A.2d 1069, 1070-1071 (Pa. Super. 1991).

Here, there is no evidence that supports a finding of self-defense or manslaughter. Appellant suggests that since Lucas discharged his firearm, there was some belief of imminent danger which justified shooting Quan. N.T. 4/11/17 at 129, 136. However, this suggestion is baseless. The evidence provides that there were three or four shots fired first by Appellant and Mr. Maldonado, then as Appellant and Mr. Maldonado were driving away, Lucas fired two shots toward the vehicle. *Id.* at 129-130, 136; N.T. 4/12/17 at 54-55. At the time that Lucas deployed his firearm, Quan had already been shot. N.T. 4/11/17 at 129. Lucas witnessed both Appellant and Mr. Maldonado point their weapons and fire at Quan while he was in their car. *Id.* There is not a scintilla of evidence that would provide a probable basis for finding manslaughter or that Appellant acted in self-defense. Following *Corbin* and *Washington*, this Court did not err in denying Appellant a self-defense and a manslaughter instruction.

## CONCLUSION

After review of the applicable statutes, testimony, and case law, there was sufficient evidence to find Appellant guilty on all charges. Additionally, the verdict was not against the weight of evidence. This Court did not err in denying Appellant a self-defense and manslaughter instruction. Accordingly, this Court's decision should be affirmed.

BY THE COURT:

_Diana L. Anhalt_

DATE: July 17, 2018

DIANA L. ANHALT, J.

21

**PROOF OF SERVICE**

I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

David S. Rudenstein, Esquire
9411 Evans Street
Philadelphia, PA 19115

Hugh Burns, Esquire
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107

Marquis Thomas
SCI-Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698

Date: July 17, 2018

By:_____
Diana Anhalt, Judge

22